May it please the Court, Counsel, I'm Patrick Ahrens, and I represent Dr. and Mrs. Tholen. This is an appeal and a defamation action that was dismissed on the pleadings under Rule 12 because the District Court concluded the publication does not refer to the plaintiffs, the Tholens. This Court reviews a Rule 12 dismissal, de novo, and the issue on appeal is a narrow one under Minnesota law. Under Minnesota law, a defendant need not identify the plaintiff by name to defame him. Rather, a defamation claim can be stated on a publication that falsely and negatively refers to someone that is ascertainable. Here the highly unique facts of Dr. Tholen's tragedy make the quintessential fact question over ascertainability improper for a Rule 12 dismissal, and that is how the District Court erred. On behalf of the Tholens, we ask that this Court reverse and remand this case so it may proceed on the merits. Let me address this issue in a bit more detail. The fundamental issue on this appeal is about plausibility. This case is just about Rule 12 as much as it is about defamation under Minnesota law. So the question is whether it is plausible that this publication about Dr. Tholen's tragedy, whether it can be ascertainably about him. Now here, Minnesota law is unambiguous that a defamatory statement need not identify the plaintiff by name. You get that from Schlieman v. Gannett, Minnesota Broadcasting, at which point the Minnesota Court of Appeals held a statement is of and concerning the plaintiff if when read in the context of the entire publication, context matters, it refers to the plaintiff. Does it matter here that this was distributed to insurance professionals? How does that, the reading audience in this case, interplay with whether or not it's readily ascertainable? I mean, does it matter that it went to insurance professionals as opposed to going to a group of medical professionals in Minnesota or something? Does that play into the analysis at all? No it doesn't, Your Honor, and let me address why. First off, again, this is a Rule 12 issue. And the district court strayed from the pleading and the complaint to even address what the context was of this audience. Second, even if that finding were to be correct, it would still ignore the modern reality of the internet. This article, as shown in paragraph 57 of the complaint, is on the internet. And so it wasn't just distributed only to a discrete set of members, but it was distributed to the whole world and is still available to the whole world today. Third, with the opportunity for discovery, we can show that the author of this article published the statement on his social media page, which again, extends the reach of this defamatory publication far beyond just the 20,000 audience of this organization. Could you plead these in your complaint, that it was on the internet and that it was posted on social media? If you look, paragraph 57 does make clear that it was posted on the internet. The social media piece was not pled in the complaint. We were denied the ability to file an amended complaint, and I would submit that would be an issue for discovery, and this is a threshold issue about plausibility. I'd also like to touch base on another issue, though, Your Honor, to answer your question. Defamation, when it is about an issue of private controversy, damages in Minnesota are presumed. You can look at the Minnesota jury instruction on the issue, which gives you all the law you need. It's 50.50. Damages are presumed. There's no obligation to prove actual harm. And so this issue of whether anyone actually ascertained the article to be about the Tholins is at most an issue of damages, but the question here is ascertainability as to whether a defamation claim has been stated. And what I'd submit is that this court, the guiding star for this court is what this court asked. Applying Minnesota law, this court explained, in issues of identification and defamation and libel context, the relationship of the story to the plaintiff as a matter of identity is a question for the jury to be determined from the story as a whole. And what we've seen in many cases is this issue of whether the context of the story, when it's not naming a plaintiff by name, that's a classic example of something to be tried to the jury. And here we're just on a Rule 12 motion about plausibility. But if you look at Brezika, you look at Covey v. Detroit Lakes, again, Schlieman was a case that was tried on this oven concerning issue. So this is fundamentally an issue that is a fact-intensive question of whether someone could ascertain this article about this tragedy is about the Tholins. And given the highly unique facts that are pled in the complaint, that this is an upper middle-aged Midwestern doctor who suffered a traumatic knee injury, ziplining in Mexico, who was denied transfer by a particular company, Assist America, that resulted in his leg being plausible that someone could ascertain that this article was about him. Now ultimately, the question for this court in that regard is whether it is so clearly not ascertainable that Assist America's publication refers to the Tholins tragedy that this court should deny the Tholins the opportunity to even seek discovery and pursue their case on the merits. The remaining issues that Assist America raised as alternative grounds for affirmance were not addressed by the district court. They're not proper for a Rule 12 motion. And this court should reverse and remand, and those issues can be addressed by the district court with the case on the merits. I'll reserve the rest of my time. Thank you. Thank you, Mr. Orange. Mr. Burrhow? May it please the court, counsel. My name is Mark Burrhow, and I'm with the law firm of Hinshaw & Culbertson here today on behalf of Apple Lee, Assist America, Inc. In short, the district court properly concluded that it was not plausible that a reader could understand the case study at issue in this case to refer to the Tholins. While the claim might be conceivable as pled, appellants have not, in the words of Twombly, nudged their claims across the line from conceivable to plausible. On a Rule B-12 motion dismissed, the court assumes all facts in the complaint as true and construes all reasonable inferences. I agree with counsel that this case is as much about Rule 12 as it is about defamation. The issue, though, is reasonable inferences are appropriate, not all inferences. And to state a claim for relief, it must be plausible on its face, and a claim of facial plausibility when the plaintiff pleads factual content that allows the court to draw the misconduct alleged. However, the district court need not accept as true wholly conclusory allegations. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense, which I propose the district court did here. In making that determination, the court may consider the complaint matters of public record, materials embraced by the complaints, and the exhibits attached to the complaint. The elements of defamation are well known and not in dispute, but we're talking here today of the of and concerning element. And we agree that a defamatory statement need not expressly name a plaintiff, so long as a reader by fair implication would understand the statement to be directed to plaintiff. Counsel, you would agree that under Minnesota law, the ascertainability of the individual is normally a question for the jury, wouldn't you? Normally it would be a question for the jury, but the district court properly found here that it is not plausible, that based upon the pleadings, based upon the complaint and the attachments, the materials embraced by the complaint, rather, that it was plausible under the circumstances. So there is case law indicating that where a large number of individuals could be the person or persons described, that that's not enough. But here, the facts seem to point to only one person. So why isn't that plausible? Well, the facts don't point to any person in particular. And I think if we look at the rationale of the district court, the fact is the case study didn't mention the Tholins by name. But the facts are highly unique here, as counsel pointed out, and the modifications that were made were minimal. You changed the resort in Mexico. There was another change, too, that's escaping my recollection. The age and the... But the age was only two years off. I mean, you've got a middle-aged physician insured by this company that lost a leg as a result of ziplining in Mexico. That's a pretty small subset of folks who could be that person. Isn't the universe probably just one? Somebody at a resort in Mexico, ziplining, suffers a knee injury resulting in the amputation of his leg. Who's a physician in that age group? I mean... So... And... Go ahead. Sorry. When we look at ascertainability and we look at Schuster and all of the other cases that are in this universe, it is possible, based upon the allegations in the complaint, to determine who, in fact, that individual was. And Sagehorn is a really good example and the case that the district court most highly analogized here. And in Sagehorn, it was a matter of wide publicity, the dispute. And I remember living through that time. It was the lead story in the Star Tribune and on talk radio and all of the other nightly newscasts. So it was possible for someone to hear the police chief in that case say the allegedly defamatory statements with regard to the tweet in question being a crime and immediately go to Twitter or Google and figure out exactly who that was. Here, that is not the case. And let's talk for a moment about the International Travel and Health Insurance Journal. There was a question to counsel with respect to the relevance and appropriateness of the district court reviewing that particular document. As I stated before, all materials that are embraced by the complaint are appropriate for the district court to consider for purposes of the Rule 12 motion. In paragraph 57 of the complaint, there is a hyperlink to the journal itself. And that's not just a hyperlink to the case study, but it's a hyperlink to the entire publication of the journal. And the subheading on the cover page of that document, if one were to follow the hyperlink from the complaint, says this is essential reading for the travel and health insurance professionals. So Judge Frank also considered the target audience of the publication. And he did not have to infer one way or another what the target audience was because the document said precisely what it is essential reading for. Therefore, it was appropriate for him to review and use as a part of his analysis. Nothing in the... Do we know whether in the absence of the publication of the complaint that hyperlinks to that website, do we know whether or not it was locatable in any other fashion? What I would say, Your Honor, is that there's nothing pled in that regard. And obviously we're in Rule 12, so that's what we care about at this point. To put a fine point on this, there's nothing that requires the district court to selectively view the evidence in the complaint. If the Tholins didn't want the judge to consider the ITIJ journal, they could have left out the hyperlink. Counsel made mention of some matters outside the record, including this note about social media publication of the case study itself. As he conceded, that was not asserted in the complaint. But there was a discussion during argument with respect to a motion to amend. I think it's important to note that there was never a motion to amend brought. It was mentioned in an opposition pleading at the district court level. And there is case law in this district with respect to, under Rule 15 and under Rule 7, that the motion must be done in writing, state the grounds, and contain the substance of the motion. And there is ample authority out there where the substance of the amendment being unknown is sufficient to not consider a proper motion to amend. Unless the panel has other questions, we would request that the order of the district court be affirmed, as the allegations in the complaint don't rise to the level of plausibility. Seeing no questions, thank you. Thank you. Mr. Aronson, I want to apologize for mispronouncing your name originally. Thank you, Your Honor. What's interesting about the argument that Assist America made and made at the district court is that Assist America's counsel said, the facts don't point to any particular person referring to the article. But their defense of this case, and one of their alternative grounds for relief, is that the article truthfully refers to the Tholins situation. And I submit, Your Honors, they can't have it both ways. They can't have it that this article does not clearly refer to the Tholins when the samples or the universe is one, which I would agree with, and then also say everything we say is true. Why not? Why not? If, in fact, it identifies the Tholins, because we can plead the alternative. We can plead inconsistent theories at this point. Why can't you say that we don't think we ever identify them, but if that's true, what we plead is absolutely true. And so we have a defense, an absolute defense. Well, there's a difference, I would say, between pleading the alternative and making representations to the court of fact. And the arguments at the district court, the arguments in the briefs to this court, were these statements are true. These statements truthfully refer to the Tholins, and it's a defense. Well, they said they truthfully refer to the facts, that they didn't identify the Tholins. If they identify the Tholins, they're still true. Isn't that a different thing? Or am I misreading it? Did I misread their answer? It wouldn't be the first time I've done that. If their defense is, or if their argument is that truth is a defense and they're not liable before defaming the Tholins because everything about the Tholins situation is true, and the universe is one that this possibly could relate to, they have adopted an acquiesce to the fact that this does, in fact, refer to the Tholins. And I would submit, Your Honor, it's particularly important for discovery then. And have witnesses come testify to whether or not this is about the Tholins. Because here, again, we have a parallel proceeding, and there is, in fact, a witness that has admitted it is about the Tholins situation, which is why we should move past the plausibility standard and get into the merits of this case. At its core, the tort of defamation recognizes the intrinsic value of the truth. And Assist America violated that truth when they defamed the Tholins in a marketing article that they tried to profit off of Dr. Tholins' tragedy. The district court erred by denying the Tholins the opportunity to prove its case on the merits. And unless this panel has any further questions, we ask that the court reverse and remand so it may proceed on the merits. Thank you. I don't see any questions. Thank you very much. We'll take the matter under advisement once again. The matter was well argued and well briefed, and we appreciate your efforts.